

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**UNITED STATES BANKRUPTCY COURT for the Northern District of California**

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br>　DENNIS MICHAEL ESCARCEGA,<br>　　Debtor | ) **CASES CONSOLIDATED FOR**<br>) **DECISION**<br>) Case No.: 16-50368 SLJ<br>)<br>) Chapter 13<br>) |
| In re<br>　EUGENE EDWARD VICK,<br>　　Debtor | ) Case No.: 16-50401 MEH<br>)<br>)<br>) Chapter 13<br>)<br>) |
| In re<br>　NANETTE MARIE SISK,<br>　　Debtor | ) Case No.: 16-50548 SLJ<br>)<br>)<br>) Chapter 13<br>)<br>) |
| In re<br>　JERI LYLE SALDUA MERCADO,<br>　　Debtor | ) Case No.: 16-50651 SLJ<br>)<br>)<br>) Chapter 13<br>)<br>) |
| In re<br>　MARK IRVIN CANDALLA,<br>　　Debtor | ) Case No.: 16-50659 SLJ<br>)<br>)<br>) Chapter 13<br>)<br>) |

MEMORANDUM DECISION

1

**MEMORANDUM DECISION REGARDING CONFIRMATION OF CHAPTER 13 PLANS USING ADDITIONAL PROVISIONS VIOLATING BANKRUPTCY CODE**

In February 2016, the judges of the San Jose Division required chapter 13 debtors to adopt the Chapter 13 Model Plan ("Model Plan"), which had been adopted by the remainder of the district in August 2013. In certain cases filed in the San Jose Division, counsel have modified the terms of the newly implemented Model Plan. The cases covered by this order include modified Model Plans.

The unvarnished purpose behind the proposed modifications is to perpetuate the apparently long-standing practice in the San Jose Division that permits confirmation of chapter 13 plans without a defined term,[1] that allows no possibility of distribution on allowed claims of general unsecured creditors,[2] and that permits Debtors to obtain a discharge prior to the end of the estimated term without further court order.[3] All in all, these provisions are intended to authorize debtors to pay off their plans and obtain a discharge at any time after confirmation without having to go through the plan modification process and without having to pay allowed unsecured claims in full.

Because the additional provisions are inconsistent with the plan in use in the remainder of the district and are contrary to the Bankruptcy Code[4] in application, they cannot be approved. This decision explains why.

---

[1] *Escarcega*, 16-50368, Docket # 4, Sec. 5.02. This citation, and similar citations to the docket of the cases being decided, are for reference to the applicable provision or arguments raised in the court's record. Our analysis of such provisions or arguments is discussed throughout this Memorandum Decision.

[2] *Vick*, 16-50401, Docket # 26, Sec. 5.02.

[3] *Escarcega*, 16-50368, Docket # 4, Sec. 5.03; *Vick*, 16-50401, Docket # 26, Sec. 5.03.

[4] All statutory references are to the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code") unless noted.

MEMORANDUM DECISION

Case: 16-50548    Doc# 39    Filed: 09/26/16    Entered: 09/26/16 13:56:46    Page 2 of 48

# I.   THE BANKRUPTCY COURT DECIDES THESE CASES INVOLVING MODIFICATIONS TO A FORM PLAN EN BANC

The cases covered by this decision involve issues that commonly arise in chapter 13 cases filed in the court's San Jose Division.  Because of the wide application of this decision, the judges who preside over chapter 13 cases in San Jose have determined to act jointly in deciding these matters.  The judges have either heard testimony in the submitted cases or have reviewed transcripts of trial proceedings and are familiar with the facts and arguments presented therein.

The court's authority to decide these cases jointly is found in Federal Rule of Civil Procedure 42, which permits the trial court to consolidate for hearing or trial matters that involve a common question of fact or law.  Fed. R. Civ. P. 42, made applicable by Fed. R. Bankr. P. 7042.  *See In re Iron-Oak Supply Corp.*, 162 B.R 301, 304 (Bankr. E.D. Cal. 1993); *In re Postconfirmation Fees*, 224 B.R. 793, 794 (E.D. Wash. 1998); 9A Fed. Prac. & Proc. Civ. § 2381 (A. Wright, A. Miller et al. 3d ed.) ("[the] objective [of Rule 42] is to give the district court broad discretion to decide how cases on its docket are to be tried so that the business of the court may be dispatched with expedition and economy while providing justice to the parties").

# II.   BACKGROUND

### A.   Chapter 13 Cases and Plans

Chapter 13 of Title 11 of the United States Code spells out the requirements, process, and rewards of a chapter 13 case.  A debtor achieves the most significant benefits of chapter 13—such as, obtaining a discharge of most unsecured debt and elimination of underwater liens on a residence and other property—by filing, confirming, and completing a chapter 13 plan.  *See* 11 U.S.C. §§ 1321, 1322, and 1325.

MEMORANDUM DECISION

In the chapter 13 plan, a debtor agrees to submit some or all of his or her future earnings or other future income to a standing chapter 13 Trustee ("Trustee"). The Trustee accumulates this money and uses it to pay creditors' claims. §1321(a)(1). The plan serves as the mechanism by which the debtor can alter certain contractual obligations such as, for example, modifying the rights of a secured creditor, curing a default on a home loan, or assuming an unexpired lease. § 1322(b). A chapter 13 debtor must begin making the payments called for in his or her plan to the Trustee within 30 days. § 1321.

A plan can be confirmed or approved by the court only if it meets stringent requirements. A chapter 13 plan must be proposed in good faith and must comply with applicable provisions of chapter 13 and the Bankruptcy Code. In addition, the plan must provide for full payment of all claims entitled to priority under § 507 (unless the claim holder otherwise agrees).[5] The plan also must provide for equal treatment of claims by class (i.e., a debtor must treat all unsecured claims equally whether the holder of the claim is a credit card company or a relative). § 1322(a)(2) and (3). Importantly, the debtor must demonstrate that the plan meets the "liquidation test," in that unsecured creditors will receive no less through the chapter 13 plan than they would receive in a chapter 7 liquidation. Finally, the debtor must prove "feasibility" by showing that he or she can make all the payments called for under the plan. § 1325(a).

The length of a chapter 13 plan varies. *See* § 1325(b)(1)(B) and (b)(4). When the Trustee or a creditor objects to confirmation, the plan length depends on debtor's income level after payment of certain expenses. *Id*. A "below median" debtor cannot be compelled to have a plan that extends past 36 months; while a plan proposed by an "above median" debtor must be no longer than 60 months.[6] A below median debtor may propose a plan that lasts longer

---

[5] A limited exception is provided for priority claims for domestic support obligations assigned to or owed directly to a governmental unit when all of the debtor's projected disposable income for a 5-year period will be paid under the plan. § 1322(a)(4).

[6] "Below median" and "above median" are statutory terms which refer to the debtor's income level as compared to the median state income for a similar household size. *See* § 1325(d)(1) and § 707(b)(2).

MEMORANDUM DECISION

4

than 36 months if desired. *See* § 1322(c). The Debtors in the cases at bar argue that because there was no objection by the Trustee or creditors in these cases, that no minimum plan length is required. We address—and reject—that point later in this opinion.

After a plan has been served on all creditors, it is set for a confirmation hearing. § 1324. If the plan satisfies all applicable requirements, then the court will confirm it.

Most plans last three to five years. It is commonly the case that circumstances arise which affect a debtor's ability to perform under his or her confirmed plan. For that reason the Bankruptcy Code provides a means to modify a plan after confirmation. § 1329. Plans may be modified to change the amount of a payment, the time for making payments, or to alter the amount of the distribution to a creditor whose claim is provided for in the plan. § 1329(a). A debtor is not the only party who is authorized by the Bankruptcy Code to seek modification of the plan. Both the Trustee and unsecured creditors also can request modification if circumstances warrant. *Id*. Alternatively, a debtor may receive a hardship discharge without completion of a plan if the debtor's "failure to complete payments is due to circumstances for which the debtor should not justly be held accountable." § 1328(b).

Once a debtor completes the required payments under the confirmed plan, the debtor is entitled to a discharge. The chapter 13 discharge provides greater protection against creditors than is obtained in a chapter 7 liquidation. *Compare* § 1328(a) *with* § 727; *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 268, 130 S. Ct. 1367, 1376 (2010) ("A discharge under Chapter 13 'is broader than the discharge received in any other chapter.'"). It is against this statutory background that we review the additional provisions proposed by Debtors.

B.    History of the Northern District of California's Model Plan

Pursuant to Bankruptcy Local Rule 1007-1, the court may approve and require the use of practice forms. Practice forms may be adopted on a district-wide or division-wide basis. As the name suggests, practice forms are used to regularize practice and foster consistency

MEMORANDUM DECISION

throughout the district or division. Predictability as to where and how information is presented assists the court and the parties. Debtors do not challenge the court's ability to adopt a practice form or the process by which the Model Plan was created or adopted. But they argue that the Model Plan is a de facto local rule that abridges a debtor's rights and enlarge a creditor's rights.[7]

In order to provide context to our discussion of the Model Plan we now address the history and adoption of the Model Plan. This discussion is not relevant to the holding and references information that is not part of the record.

The judges of this court determined to draft a model chapter 13 plan for the entire district in 2012. They sought to move away from the three forms and assorted individual plans then in use. During 2012 and 2013, three judges drafted the Model Plan for the Northern District. In the process, they solicited and received written comments on the draft Model Plan from the three chapter 13 trustees in the district, as well as from members of the debtor and creditor bar. The judges then met with members of the bar and interested trustees and received additional comments. A number of the recommendations received were incorporated into the Model Plan. The court designed the Model Plan with the goal of creating a practical, efficient, and effective plan.

In August 2013, the Oakland and San Francisco Divisions implemented the Model Plan. At the same time, the Santa Rosa Division allowed, but did not require, its use. The San Jose Division did not adopt the plan at that time.

In late 2015, the judges in the San Jose Division announced that they would adopt the Model Plan. Doing so was important for two reasons. First, one of the bankruptcy judges assigned to the San Jose Division has retired and is not going to be replaced immediately. By regularizing the chapter 13 practice throughout the district, along with altering judicial assignments, the court is better able to provide parties with equal access to courts and judges'

---

[7] *Escarcega*, 16-50368, Docket # 46, page 22, lines 13-18, and page 23, lines 6-16.

MEMORANDUM DECISION

calendars. This need will only increase in the foreseeable future, as a second judge will retire in 2017, and he, too, will not be replaced immediately.

Second, the United States Judicial Conference's Advisory Committee on Bankruptcy Rules has proposed the creation of a National Chapter 13 Form Plan ("National Plan"). It is projected that as of December 1, 2017 every bankruptcy court will be required to use the National Plan, unless the district adopts a form plan consistent with certain parameters. Districts may adopt a form plan prior to adoption of the related rule. Use of the Model Plan anticipates this important change in district procedures.

Though Debtors do not challenge the court's formulation of the Model Plan, they contend that requiring its use is a de facto local rule that is inconsistent with acts of Congress and, therefore, must be invalidated. This argument is misplaced as the Model Plan is a form not a rule. Bankruptcy Local Rule 1007-1 approves the use of required practice forms. The Model Plan is neither unlawful nor a violation of any party's rights because it faithfully follows applicable law–unlike the proposed additional provisions. The analysis supporting this conclusion is set forth in Sections III, F and G, below.

C.     The Confirmation Process in the San Jose Division

Confirmation of the plans covered by this opinion was consistent with longstanding procedures in the San Jose Division.[8] As noted, the number of chapter 13 cases filed in the division is high and the court has struggled with significant calendar congestion and resultant delays to litigants. The court has promulgated local procedures to improve access to the court and speed decision-making.

When a chapter 13 plan is filed in the San Jose Division, creditors are given notice of the confirmation calendar to which that case has been assigned. Given the large number of

[8] A detailed description of these procedures is available at http://www.canb.uscourts.gov/procedure/san-jose/san-jose-chapter-13-procedures-and-forms-packet

MEMORANDUM DECISION

chapter 13 cases, it is not always possible for the court to consider in a meaningful way objections filed by the Trustee and creditors at the initial confirmation hearing. As a result, the Bankruptcy Court created a system by which initial confirmation hearings are held, at which plans are confirmed only if they have not drawn an objection, the trustee has all information required to recommend confirmation, and they otherwise comply with the Bankruptcy Code. If an interested party interposes an objection, the court refers the case to the Trustee's Pending List (the "TPL"). If a case is placed on the TPL, and the debtor resolves outstanding objections, the Trustee restores the matter to the uncontested confirmation hearing calendar. Parties can always specially set an unresolved objection to confirmation for hearing when they are ready to argue the matter.

The initial confirmation hearing in *Vick* was held April 26, 2016. The initial confirmation hearings in *Escarcega*, *Sisk*, *Mercado*, and *Candalla* were held May 19, 2016. No one objected to confirmation in these cases. In each case, though, Debtors attached additional provisions to the plan. The court directed the Trustee to move the cases to the TPL to give the court an opportunity to determine if the plans complied with the Bankruptcy Code.

At the confirmation hearings, the court expressed its concerns about the nature of the additional provisions and made some preliminary comments about the plans' confirmability. Counsel were given an opportunity to respond. Because of the complexity of the issues, the absence of a Trustee objection, and the need for certain factual findings, each case was scheduled for an evidentiary hearing or trial on confirmation. In advance of the hearings, the court issued orders directing counsel to address certain legal issues raised by the additional provisions. The Debtors filed initial and supplemental briefs addressing those questions.[9]

---

[9] See *Vick*, 16-50401, "Order re Post-Trial Briefing," Docket # 25; *Escarcega*, 16-50368, "Chapter 13 Plan Trial Scheduling Order," Docket # 42.

Attorney James S.K. Shulman is counsel for Debtors in two cases: *In re Eugene Edward Vick*, Case No. 16-50401, and *In re Jeri Lyle Saldua Mercado*, Case No. 16-50651. Attorneys Jim Gold and Norma Hammes are counsel for Debtors in three cases: *In re Dennis Michael Escarcega*, Case No. 16-50368, *In re Mark Irvin Candalla*, Case No. 16-50659, and *In re Nanette Marie Sisk*, Case no. 16-50548. The briefs filed by each counsel assert the same arguments in each case represented by that counsel. References in this decision to positions

MEMORANDUM DECISION

Case: 16-50548    Doc# 39    Filed: 09/26/16    Entered: 09/26/16 13:56:46    Page 8 of 48

1    Having completed an evidentiary hearing in each case, the court now issues this

2    Memorandum Decision.

3

4    D.    The Court's Consideration of these Cases Complied with the Bankruptcy Code

5

6    Before discussing its conclusions, the court must address the argument advanced by

7    counsel in the *Candalla*, *Escarcega*, and *Sisk* cases that the confirmation process employed by

8    the court in these cases violates the Bankruptcy Code.[10]

9    Debtors first suggest it is not the court's place to substantively review plans as to

10   which no interested party has objected.[11]  They apparently believe the plans should be

11   summarily confirmed given the absence of an objection.  To comply, the Bankruptcy Court

12   would be required to abdicate its duty to ensure that chapter 13 plans comply with the law, a

13   duty that must be discharged *even where there is no objection to confirmation.  See Espinosa*,

14   559 U.S. at 278, 130 S. Ct. 1367 at 1381 (stating, in the context of § 523(a)(8), that the

15   bankruptcy court must make an "independent determination of undue hardship before a plan

16   is confirmed, *even if the creditor fails to object or appear in the adversary proceeding*.")

17   (emphasis added).

18   Next, these Debtors argue that the delays of supplemental briefing and an evidentiary

19   hearing "have postponed the opportunity for a substantive hearing on confirmation of the

20   Debtor's proposed plan well beyond the limit of 20 to 45 days past the § 341 meeting imposed

21   by § 1324."[12]  Debtors misconstrue § 1324, which requires the court to convene a hearing on

22   confirmation of the plan between 20 and 45 days after the meeting of creditors required by

23   _____

24   asserted in the *Vick* and *Escarcega* pleadings are representative of the related briefs unless
     otherwise stated.

25   [10] *Escarcega*, 16-50368, Docket # 46, page 9, lines 4-19.

26

27   [11] *Escarcega*, 16-50368, Docket # 46, page 3, line 23 – page 4, line 27.

28   [12] *Escarcega*, 16-50368, Docket # 46, page 9, lines 5-7.

MEMORANDUM DECISION

9

§ 341. *See* § 1324(b). Nothing in the statute requires a substantive or conclusive hearing within this period, let alone a decision on confirmation. Beyond that, the argument misses the point that the court held substantive hearings on confirmation in each of the affected cases on May 19, 2016. Due to the uniform nature of the additional provisions, the legal issues raised, and factual issues specific to each case, multiple initial hearings on confirmation were addressed on this date. The record reflects that substantive discussion occurred in each of these cases at that time, along with the hearing in the *Mercado* case on the same date.[13] The argument that the court has failed to comply with § 1324(b) lacks merit and is overruled.

Debtors further contend that placing cases with provisions that modify the Model Plan on the TPL is tantamount to the adoption of a local rule that violates the Bankruptcy Code. No one can reasonably argue that the adoption of a local rule that violates federal law is not permissible. But we do not face that situation here. The court has a duty to consider whether chapter 13 plans comply with the Bankruptcy Code and has adopted mechanisms to decide that question. Because Debtors' argument depends on a conclusion that the plans at issue are entitled to confirmation as a matter of law because the trustee has not objected—a point we do not accept—the argument cannot be sustained.

## III.    ADDITIONAL PROVISIONS ADDED TO MODEL PLAN

A.    Proposed Template of Additional Provisions

Debtors in the cases at bar started with the Model Plan. Each plan also includes standardized modifications, which were added to the plan in section 5, denominated "additional provisions." The additional provisions drafted by counsel appear in a "check the box" format. As initially filed, the additional provisions specified in each case were identical. Due to subsequent amendments in *Vick* and *Mercado* the additional provisions are no longer

---

[13] *Escarcega*, 16-50368, Docket # 41; *Candalla*, 16-50659, Docket # 24; *Sisk*, 16-50548, Docket # 26; *Mercado*, 16-50651, Docket # 25.

MEMORANDUM DECISION

10

identical. Nevertheless, the result sought by the various proposed changes to the Model Plan do not materially differ.

The additional provisions that have been added to these plans were not previously approved by the court nor are they part of the Model Plan in use across the district. Instead, these provisions were drafted by Debtors' counsel to rectify perceived inadequacies in the Model Plan. After drafting them, counsel circulated the provisions to the local debtors' bar as an example of additional provisions that should be incorporated into their plans.[14] According to counsel, their intent was to create a template that "may be used for many Debtors with differing, but commonly occurring, circumstances."[15]

B.    The Trustee Approved the Additional Provisions in Advance

Counsel in these cases negotiated the use of additional provisions in advance with the Trustee, who testified under oath in the *Escarcega* trial that she discussed the provisions with counsel. She agreed that, if the provisions being advocated by counsel were employed to alter the Model Plan, she would not object to confirmation. She reasoned that yielding to the proposed additional provisions would avoid what she termed the "impactful" consequences of *In re Flores,* 735 F.3d 855 (9th Cir. 2013). By this, she means that, without an objection to confirmation, a plan has no minimum length for a below-median debtor. Debtors and the Trustee are wrong about this.

---

[14] *Vick*, 16-50401, Docket # 14, page 5, lines 21-27.

[15] *Vick*, 16-50401, Docket # 14, page 5, line 27 – p. 6, line 1.

MEMORANDUM DECISION

C.      <u>Some Chapter 13 Plans Confirmed in the San Jose Division Prior to Implementation of the Model Plan Were Administered in Ways That Violated the Bankruptcy Code</u>

Before turning to the changes Debtors are attempting to make to the new Model Plan, it is helpful to understand how certain plans in the San Jose Division have been administered in the recent past. Only with an understanding of existing practice is it possible to understand the proposed additional provisions and how they violate the Bankruptcy Code.

Contrary to every other practice form plan previously used in this district, the prior San Jose form plan included language referencing an "estimated" term.[16] The commonly used plan stated that disbursements on unsecured nonpriority claims would be paid "at a rate of ___ cents on the dollar" for a term that was stated (e.g., 36 or 48, or 60 months), with a proviso that the term was "estimated." In other words, the practice was for a debtor to file a plan providing for payments of $___ for 60 months. The plan usually provided for a $0 distribution to general unsecured creditors.[17] The plan term, as noted, was estimated. After the plans were confirmed and claims were filed, the Trustee would commence making disbursements.

It has become clear that the plans were administered in a manner inconsistent with the Bankruptcy Code. Once a debtor had completed payments to the Trustee sufficient to cover administrative expenses, such as counsel's fees, payment on secured debt (including arrears), and priority claims (e.g. taxes), the plans were considered completed, discharges issued, and the case closed. It did not matter if the plan had run the full "estimated" length or not. Thus,

---

[16] The prior San Jose plan provided at Section 2(d): "From the payments received, the Trustee will make disbursements as follows: . . . (d) On allowed general unsecured claims as follows: _____ at a rate of _____ cents on the dollar. The estimated term of the plan is ___ months (percentage plan)."

[17] Alternatively, some plans would provide for a capped amount to be distributed to general unsecured creditors. Presumably, this amount satisfied the best interests of creditors test in § 1325(a)(4).

MEMORANDUM DECISION

12

in some cases, plans terminated much earlier than their stated estimated length. The court is aware of cases that lasted only 11, 24, or 36 months instead of the stated 60 months.[18] This occurred even though the court and, the court assumes, a creditor, would have deduced the length would be closer to the stated estimated duration.

The early termination of these "estimated term" plans was accomplished without compliance with the Bankruptcy Code. In these cases, when the Trustee determined that all required payments had been completed, she filed a document called notice of plan completion without notice to any affected creditors. At that point, the Clerk of Court processed the debtor's discharge. Later, the Trustee filed a final report and the case closed with the entry of a final decree.

The routine early termination of chapter 13 plans does not appear to have been actively concealed from the court, but the practice certainly was not made clear. Counsel and the Trustee take the view that plans which include an estimated term can be concluded at any point without notice to anyone.

To understand this practice better, the court reviewed cases assigned to Judges Hammond and Johnson in which a final decree was entered in the San Jose Division between April and July 2016. The primary source of information was the Chapter 13 Trustee's Final Report and Account filed contemporaneous to the submission of a proposed final decree.[19] As illustrated in the following tables, a final decree was submitted for a total of 476 cases in which a discharge was obtained. Of the cases in which a discharge was received, 55%, or 260 or the 476 cases, completed prior to their stated/estimated term. While many cases terminated close to term, 30% of all cases terminated more than 6 months early and 10% of all cases terminated more than 18 months early. Four cases terminated more than 3 years early, and one of them terminated over 4 years early.

---

[18] Attached as Exhibit A is a spreadsheet detailing the cases supporting these findings.

[19] Filing of the Chapter 13 Trustee's Final Report and Account is administrative in nature and not subject to review or approval by the court.

MEMORANDUM DECISION

UNITED STATES BANKRUPTCY COURT
for the Northern District of California



### April - July 2016 Cases with Final Decree and Discharge



Discharged earlier than stated term without 100% to unsecured creditors

45%

55%

| How early? | # of Cases |
|---|---|
| Over 3 yrs | 4 |
| 25 to 36 months | 13 |
| 13 to 24 months | 71 |
| 12 months or less | 172 |

Discharged after full term or unsecured creditors paid 100%

### Early Discharge Without Full Payment to Unsecured Creditors
### (6 month increments)



| | |
|---|---|
| more than 42 months | # of Cases: 2 |
| 37 to 42 months | # of Cases: 2 |
| 31 to 36 months | # of Cases: 5 |
| 25 to 30 months | # of Cases: 8 |
| 19 to 24 months | # of Cases: 30 |
| 13 to 18 months | # of Cases: 41 |
| 7 to 12 months | # of Cases: 57 |
| 6 months or earlier | # of Cases: 115 |

0    20    40    60    80    100    120    140

MEMORANDUM DECISION

14

In each of these cases, the holders of allowed, unsecured nonpriority claims either received no distribution or, if the plan provided for a minimum distribution, they received the stated minimum and nothing more. In none of these cases did the debtor or the Trustee file a motion requesting approval of a modification of the duration of the confirmed plan to permit its early termination and an early discharge without full or at least increased payment to unsecured nonpriority creditors.

Why were so many plans terminating early? It is difficult to determine the precise reason because an individual debtor's payment history does not appear in the record. Nonetheless, the court's analysis reveals two principal reasons behind early terminations. In some cases, the filed—and allowed—secured and priority claims sought lower amounts than debtors estimated in their schedules.[20] In other cases debtors were able to pay more than the required plan payment in some months, thus accelerating their performance.[21] This second theory rests on the premise that if the docket does not reflect changed claim amounts or other activity then additional or higher payments are likely the cause.

### D. The Additional Provisions Debtors Have Added to Their Plans Seek to Perpetuate the Practice of Terminating Plans Early

Debtors intend the proposed additional provisions to continue the practice of confirming plans with indeterminate lengths that can be terminated early upon payment. According to Debtor's briefs, "[t]he additional provisions proposed by Debtor's plan do not produce a result that is different from plans which were routinely confirmed by this Court since ascending to the bench in the San Jose."

The court, recognizing that purpose, offered Debtors the opportunity to brief whether a debtor's use of an *estimated* plan length authorizes the early termination of a plan without the

---

[20] See for example *In re Garcia*, 12-57725; *In re Pardes*, 12-51535.

[21] See for example *In re Cooper*, 12-55539; *In re Murga*, 12-56248.

MEMORANDUM DECISION

necessity of filing a motion to modify. In response, Debtors confirm their view that their use of an *estimated* plan length authorizes the completion of the plan once the debtor completes the estimated disbursements, without requiring a motion to modify.[22] Addressing the modified version of the additional provisions, Debtors also argue that if a plan states that it will be deemed completed once all allowed secured and priority claims and administrative expenses are paid then it cannot result in an early termination: therefore, a motion to modify is not required.[23] This is consistent with the Trustee's testimony regarding termination of plans.[24]

E.    Examination of Proposed Additional Provisions §§ 5.02 and 5.03

To understand the argument Debtors are making, it is necessary to review the proposed changes they have offered to the Model Plan. An example of the initial additional provisions from *Escarcega* are attached as Exhibit B.[25]

The Debtors have proposed two additional provisions which delete the standard Model Plan provisions and replace them with different provisions. The two provisions are found at § 5.02, which modifies § 1.01(a) of the Model Plan, and § 5.03, which modifies § 2.12 of the Model Plan. Plans incorporating these additional provisions do not comply with §§ 1328(a)

---

[22] *Escarcega*, 16-50368, Docket # 46, page 20, lines 26-27, section heading, emphasis in the original.

[23] *Vick*, 16-50401, Docket # 27, page 16, lines 18-20.

[24] *Escarcega*, 16-50368, Docket # 54, Transcript of Trial Proceedings, p. 47, lines 10-24.

[25] At the initial confirmation hearing in *Vick*, the court informed counsel that only those additional provisions applicable to the Debtor's plan would be considered. See *Vick*, 16-50401, April 26, 2016 hearing transcript, pages 6-8, Docket #28. The Debtors in *Vick* and *Mercado* filed amended plans with revised additional provisions limited to modifications specific to their plan. An example of the amended additional provisions from *Vick* is attached as Exhibit C. The court has made every effort to use the most recent version of the plan filed in these cases.

MEMORANDUM DECISION

and 1329 and, therefore, do not satisfy § 1325(a)(1) which conditions confirmation on a plan's complying with the provisions of chapter 13.

    1.      <u>Section 5.02 Additional Provisions</u>

       Section 1.01(a) of the Model Plan requires debtors to state the number of months they believe will be required to complete the plan, as well as information about monthly payments that will be made to the Trustee to complete the plan.

> **1.01  Plan payments.** To complete this plan, Debtor shall:
>     a.  Pay to Trustee \$____ per month for ____ months from the following sources: (describe, such as wages, rental income, etc.): _____.
>     Debtor shall after _____ months, increase the monthly payment to \$_____ for _____ months.

       Debtors have submitted a plan that seeks to obfuscate this provision. Their plan provides:

> **5.02** Section 1 of the plan is modified as follows:
>
>     a. The length of the plan as reflected in the cumulative terms of the monthly payments provided in Section 1.01(a) ***is the estimated length of the plan***.
>
> [*Escarcega*, *Sisk*, and *Candalla*] (emphasis added)
>
> OR
>
> **5.02** Section 1 of the plan is modified as follows:
>
>     Notwithstanding Section 1.01(a), ***once the debtor has paid all allowed secured and priority claims and administrative expenses*** as provided for in this plan, ***the plan shall be deemed completed*** and no further payments to the Trustee shall be required. [*Vick* and *Mercado*] (emphasis added)

MEMORANDUM DECISION

17

In *Escarcega*, *Sisk*, and *Candalla*, Debtors have inserted a phrase that does not appear in the original Model Plan—that the length of the plans is only *estimated*. In *Vick* and *Mercado*, Debtors propose a different formulation—that payments to the Trustee will cease just as soon as certain required payments are completed, including those to administrative expense claimants, priority claimants, and secured creditors. Unsecured nonpriority creditors are deliberately omitted from this formulation.

2. <u>Section 5.03 Additional Provisions</u>

In tandem with the additional provisions altering the term, Debtors have included an additional provision limiting distribution to unsecured nonpriority creditors beyond that provided in the Model Plan. The Model Plan provides:

> **2.12 Class 7: All other unsecured claims.** These claims, including the unsecured portion of secured recourse claims not entitled to priority, total approximately $_____. The funds remaining after disbursements have been made to pay all administrative expense claims and other creditors provided for in this plan are to be distributed on a pro-rata basis to Class 7 claimants.
>
> **[select one of the following options:]**
>
> _____ **Percent Plan.** Class 7 claimants will receive no less than ___% of their allowed claims through this plan.
>
> _____ **Pot Plan.** Class 7 claimants are expected to receive ___ % of their allowed claims through this plan.

By this formulation, the Model Plan communicates to creditors the total amount of unsecured claims anticipated by the debtor and allows the debtor to estimate the projected distribution under a percentage or pot plan. But it does not prohibit unsecured nonpriority

MEMORANDUM DECISION

18

creditors from receiving a greater recovery than estimated by the debtor. If additional funds are received by the Trustee, they may be distributed to unsecured nonpriority creditors.

Debtors have determined to alter the result under their proposed plans. They leave Section 2.12's options blank and propose additional provision § 5.03. Their proposed plan language has been deliberately calculated to prohibit the Trustee from distributing excess funds.[26] Under the prior San Jose form plan, any additional funds received above the stated percent or amount were returned to debtors unless *the Trustee* obtained an order modifying the plan authorizing distribution of the funds. Debtors hope to perpetuate this practice by adding the following provisions:

---

**5.03.** Section 2 of the plan is modified as follows:

    …

   a.  Section 2.12 is modified to add the following, if checked here:

      ✓  Class 7 claimants shall receive an aggregate dividend of $___0___, which amount can be increased by up to $1.00 to an amount sufficient for the trustee to administer payments on these claims, which shall be shared pro-rata based on the amounts of their respective allowed nonpriority unsecured claims. [*Escarcega*, *Sisk*, *Candalla*]

OR

**5.03.** Section 2.12 of the plan is modified to add the following:

    Class 7 claimants shall receive an aggregate dividend of $__0__. [*Vick*, *Mercado*]

---

Debtors' stated reason for making this revision rests on their contention that the Model Plan "substantively abridges the Debtor's rights" by requiring a debtor "to make payments to general unsecured creditors in excess of the amounts required by the Bankruptcy Code" when

---

[26] It is possible to interpret this language in a less constrictive manner, but here, the Trustee applies the same interpretation. For example, the Trustee moved to modify a debtor's plan to change it from a 0% dividend to unsecured nonpriority creditors to provide for distribution of $18,441.28 to this group of creditors. The motion stated it would "allow the Trustee to distribute funds on hand, as well as remaining plan payments to be made, in accordance with the Plan as modified." *In re Stewart*, 13-52775, Docket # 76, pages 1-2 and 6, lines 12-16.

MEMORANDUM DECISION

Case: 16-50548    Doc# 39    Filed: 09/26/16    Entered: 09/26/16 13:56:46    Page 19 of 48

the debtor is entitled "to propose a zero dollar dividend plan."[27]  They further assert that if a "plan proposes a zero dollar dividend, there is no further reason for that creditor to be interested in the plan, unless the creditor has specific knowledge about the finances of the debtor that causes the creditor to question that result. . . . Zero dollars paid over 48 months or zero dollars over 60 months have the same impact on the creditor.  Neither number of months is more meaningful than the other; zero dollars is still zero dollars."[28]

F.     The Proposed Additional Provisions Violate the Bankruptcy Code

In their confirmation briefs, Debtors correctly assert that §§ 1322 and 1325 do not require a plan to provide a fixed term or a minimum distribution to unsecured nonpriority creditors in the absence of an objection to confirmation.  They further argue that the precise length of the plan cannot be stated at the outset of the case.  Subsequent events, such as the allowed amount of filed claims and changes in the Trustee's fee bear upon the time needed to complete a plan.  For that reason, they argue that an estimated term is not only advisable but necessary.[29]  They assert they are entitled to confirm plans with indeterminate lengths based on this contention.

Counsel correctly point out that the Trustee's fee can fluctuate and that claims can come in higher or lower than anticipated.  As a result, plans may need to be adjusted to properly pay the affected claimants.  But this eventuality cannot logically support a conclusion that a plan *never has to have a specified length*.  The proper way to address these issues is to *modify the plan* using § 1329.

---

[27] *Vick*, 16-50401, Docket # 27, page 11, lines 21-25.

[28] *Escarcega*, 16-50368, Docket # 46, page 14, lines 19-25.

[29] *Vick*, 16-50401, Docket # 27, pages 10-11; *Escarcega*, 16-50368, Docket # 46, pages 11-14.

MEMORANDUM DECISION

20

The proposed National Plan, for example, allows an extension of the plan beyond the stated term but no longer than 60 months.[30] The language in the National Plan is consistent with § 1322(d) which provides an outside limit of 3 or 5 years on a plan, depending on debtor's current monthly income. It also affords debtors additional time if claims are filed higher than anticipated or the Trustee's fee increases. Further, this court also recognizes the need for flexibility due to difficulties encountered by debtors during the plan term; for that reason it has issued standing orders intended to facilitate successful completion of a plan.[31] If a debtor desires further adjustments then § 1329 offers a mechanism for requesting such relief.

But to be clear, the Bankruptcy Code anticipates that a plan may need to be modified. It provides, for example, that at any time after confirmation but before the completion of payments under a plan, the plan may be modified, upon the request of the debtor, trustee, or the holder of an allowed unsecured claim. § 1329(a). As relevant here, a plan may be modified to extend or reduce the time for payments under the plan. § 1329(a)(2). Plan modifications are subject to the plan requirements set forth in §§ 1322(a), 1322(b), and § 1323(c), as well as the requirements of § 1325(a). § 1329(b)(1). Plan modification requires that notice and an opportunity to be heard be provided to the trustee and all concerned creditors. Fed. R. Bankr. P. 3015(g). The trustee or a party who is adversely affected by the

_____

[30] Section 2.1 of the proposed National Plan provides:

**Debtor(s) will make regular payments to the trustee as follows:**

$ _____ per _____ for _____ months . . .

If fewer than 60 months of payments are specified, additional monthly payments will be made to the extent necessary to make the payments to creditors specified in this plan.

[31] See "Procedures for Suspending Payments in Chapter 13," approved July 1, 2015, and "Distribution Order Regarding Model Chapter 13 Plan February 1, 2016," dated February 1, 2016. These documents are available on the court's website at http://www.canb.uscourts.gov/procedures/san-jose.

MEMORANDUM DECISION

modification may object, allowing the "court to consider the debtor's good faith in proposing early payoff modifications, as well as issues as to the debtor's overall financial circumstances, future earnings and income, and the elimination of future risks of nonperformance." *In re Schiffman*, 338 B.R. 422, 435 (Bankr. D. Or. 2006).

### 1.     Self-Modifying Plans are Prohibited

Debtor's attempt to construct a plan that authorizes modifications without notice to parties in interest eliminates creditor's rights to object to the modification and flouts § 1329. In *In re Anderson*, the chapter 13 trustee required debtors to supply him with a "Best Efforts Certification" as a condition of plan confirmation.  21 F.3d 355, 358 (9th Cir. 1994).  This certification required debtors to pay their actual disposable income to the trustee rather than the projected disposable income as required by § 1325(b)(1)(B) (superseded).  The debtors objected, contending this amounted to a requirement that their plan payments adjust regularly based on the trustee's calculations of their income.  The Ninth Circuit rejected self-modifying plans in *Anderson*, concluding that the Bankruptcy Code prohibits such plans as contrary to congressional intent:

> We reject the Trustee's argument that he may in this fashion extinguish the Andersons' statutory right to ask the bankruptcy court to disapprove a modification of the plan proposed by the Trustee.  By providing in § 1329 a mechanism to modify a confirmed plan, Congress plainly did not intend to vest trustees with such unfettered authority.  *Cf. United States v. Merhmanesh*, 689 F.2d 822, 829 (9th Cir. 1982) ("We may not construe a statute so to make any part of it mere surplusage").

*Id.*  (internal footnotes omitted).

Debtors cavalierly state that creditors are not entitled to any notice of an early termination if the plan paid them nothing.  Why would a creditor care, they argue, if the creditor received $0 in 30 months or $0 in 60 months.  This line of argument is both illogical and contrary to the exacting provisions of the Bankruptcy Code.

MEMORANDUM DECISION

It is illogical because it stands to reason that creditors would be interested to know why a debtor who proposed a plan of 60 months, with no payments to unsecured creditors, was able to pay that plan off in only 30 months and receive a discharge. Has this debtor gotten a new job or found assets that were not disclosed? Moreover, the creditor may question whether the plan was proposed in good faith – and they are not required to have "specific knowledge about the finances of the debtor" to raise such a concern.

The argument makes little sense from a statutory standpoint, either. Congress included § 1329(a) in the Bankruptcy Code to allow the trustee and unsecured creditors to move to modify a plan. Such a motion presupposes that the facts of a debtor's case have changed since the time of filing or confirmation. The statute permits a reevaluation of the case to deal with changing facts. It is simply not true that a debtor has no obligation to give notice to creditors of his intent to terminate a chapter 13 plan early. As the Bankruptcy Court noted in *Schiffman*: "[T]here is nothing inequitable or contrary to the Bankruptcy Code in requiring that debtors go through the plan modification process in order to pay their chapter 13 plans off early without paying allowed creditor claims in full." *Schiffman*, 338 B.R. at 435.

2.     Confirmation of a Plan is not Res Judicata During the Case

Debtors further argue that after confirmation of a chapter 13 plan that calls for no payments to unsecured creditors the interests of those creditors in the chapter 13 case should be considered terminated. They contend "Unless the unsecured creditor objects to the plan under § 1325(b) for cause, the term of the plan will be of no concern to the creditor."[32] (emphasis in original). Under this theory, upon confirmation of the original plan in a chapter 13 case, and assuming that plan called for no payments to those creditors, they would have no

---

[32] *Escarcega*, 16-50368, Docket # 46, page 14, lines 21-23.

MEMORANDUM DECISION

23

further interest in the plan as a legal matter. Debtors apparently arrive at this conclusion through the principles of res judicata. None of this is correct.

Res judicata is a legal principle that bars relitigation of a matter that was brought to judgment in a different case or controversy by a court of competent jurisdiction. The doctrine has no application to this case. *See Arizona v. California*, 460 U.S. 605, 619, 103 S. Ct. 1382, 1391 (1983), *decision supplemented*, 466 U.S. 144, 104 S. Ct. 1900 (1984) ("It is clear that res judicata and collateral estoppel do not apply if a party moves the rendering court in the same proceeding to correct or modify its judgment.")

Section 1327(a) does not support Debtors' argument, either. That section provides that a plan is binding on debtors and creditors provided for by the plan. Thus, the plan becomes law of the case, subject to the possibility of modification pursuant to § 1329(a). Section 1329(a) provides a statutory mechanism to modify confirmed plans to increase or reduce plan payments, to change the timing of payments, and to make other alterations. It makes no sense that those modifications would be authorized if particular creditors were barred from objecting because they failed to object *to an entirely different plan*. Thus, while one plan may be acceptable to the creditors, a later plan based on changes in income, assets, or other factors, may not. In any event, those creditors remain involved because the court must always pass on the good faith of any modified plan. *In re Sunahara*, 326 B.R. 768, 781 (B.A.P. 9th Cir. 2005) ("In determining whether to authorize a modification that reduces a plan term to less than 36 months without full payment of allowed claims, the bankruptcy court should carefully consider whether the modification has been proposed in good faith.").

None of this prohibits a debtor from filing a motion to modify. A debtor may file a motion to modify any time it is warranted. The motion will be reviewed by the Trustee, and ultimately the court, to ensure that it satisfies the requirements of § 1329(b) and *Sunahara*. Here, we simply hold that Debtors cannot foreclose creditors' and the Trustee's rights to object by failing to move for modification when necessary.

The practice that has developed in this division is contrary to the Bankruptcy Code and will not be ratified by this court. Additional Provisions 5.02 and 5.03 are intended to

MEMORANDUM DECISION

24

UNITED STATES BANKRUPTCY COURT
for the Northern District of California

implement administration of a chapter 13 case in a manner that is contrary to § 1329.  Hence, this court finds that these additional provisions do not comply with the provisions of chapter 13, specifically § 1329, and render the plan unconfirmable pursuant to § 1325(a)(1).

G.    Chapter 13 Plans are Subject to a Temporal Requirement

It is important to address counsel's express argument that debtors with below median incomes need not provide any term to their chapter 13 plans.  *Because of the way the practice has developed in this division*, we determine that each and every plan shall have a stated length and any substantive variation from that length will require a motion to modify.  Although not cited by Debtors, several well-reasoned decisions have concluded that a chapter 13 plan must run to its stated length.

In *In re Fridley*, the Bankruptcy Appellate Panel ("BAP") found that §§ 1328(a) and 1329(a) confer an implied temporal requirement that a plan remain in effect for its designated duration unless formally modified.  380 B.R. 538 (B.A.P. 9th Cir. 2007).  *Fridley* was a post-BAPCPA[33] case in which debtors had below median income and proposed a plan with a 36 month applicable commitment period.  The plan provided no payment to unsecured creditors.  Having experienced a dramatic rise in income post-confirmation, debtors paid off their plan in 14 months and sought a discharge.  The trustee, who had not yet filed a motion to modify the plan, objected, contending that debtors' plan required they remain in chapter 13 for the minimum 36 months.  Obviously, if that were so, the trustee would have time to modify the plan and capture payments for unsecured creditors not anticipated by the confirmed plan.

---

[33] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").  Pub.L. No. 109–8, 119 Stat. 23 (2005).  As recognized by the Supreme Court: " ' Congress enacted [BAPCPA] to correct perceived abuses of the bankruptcy system.' In particular, Congress adopted the means test—'[t]he heart of [BAPCPA's] consumer bankruptcy reforms,' … to help ensure that debtors who *can* pay creditors *do* pay them … [U]nder BAPCPA, 'debtors [will] repay creditors the maximum they can afford.' " *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 64, 131 S. Ct. 716, 721 (2011)(internal citations omitted).

MEMORANDUM DECISION

1      The BAP affirmed the bankruptcy court's order denying the motion for entry of a

2 discharge. It concluded that debtors' confirmed plan required a 36 month term. The

3 confirmed plan specified that length. To shorten the plan's length, a motion to modify under

4 § 1329(a) would be required.

5      The BAP observed that under § 1328(a), a discharge is permissible "as soon as

6 practicable after completion by debtor of all payments under the plan." Plan modifications,

7 however, are authorized "at any time after confirmation of the plan but before the completion

8 of payments under such plan." § 1329(a). This scheme set up a sort of race, the BAP

9 concluded, for the discharge of unsecured debt, when a debtor's income has risen.

> Thus, part of the statutory bargain inherent in chapter 13 is that the debtors
> must, for the prescribed life of the plan, run the gauntlet of exposure to
> trustee or creditor requests to increase payments. BAPCPA, by creating a
> debtor's duty to make information available to those who could propose
> modifications, actually reinforced this aspect of the statutory bargain.
>
> A debtor desiring to prepay a chapter 13 plan and obtain an early discharge
> without paying allowed unsecured claims in full must follow the § 1329
> modification procedure prescribed by Rule 3015(g). In exchange for a
> § 1328(a) discharge of more debts than can be discharged in chapter 7, the
> debtor's increases in income are exposed to the risk of being captured by
> way of § 1329 modifications proposed by the trustee or an unsecured
> creditor. The debtor cannot short-circuit that exposure merely by
> prepayment, but rather must obtain a § 1329 plan modification after having
> given the notice required by Rule 3015(g).

*Fridley*, 380 B.R. at 544 (notes omitted).

     *Fridley* is consistent with pre-BAPCPA[34] cases in which a debtor sought to prepay and

terminate a plan early through a refinance—requesting to pay unsecured creditors their "plan

amount" but not the full amount of their claims.

---

[34] BAPCPA contained a number of amendments to chapter 13. But neither §§ 1328(a) nor 1329 were amended. Further § 1325(a)(3) remains the same, requiring a plan to be proposed in good faith. Section 1329(b)(1) incorporates this section into the standards applicable for approval of a motion to modify.

MEMORANDUM DECISION

*In re Sunahara*, 326 B.R. at 773, addressed whether the "three-year period" provided in then § 1325(b)(1)(B) was "a measure of the value that creditors must receive under the plan" (as argued by the debtor) or "a measure of the lapse of time that must occur" (as argued by the trustee). The BAP held that the three-year period was temporal but that a debtor could seek to modify the plan pursuant to § 1329 and that while the disposable income test does not apply to the motion to modify, the good faith standard of § 1325(a)(3) does. *Id.* at 781-82.

Similarly, *In re Keller*, 329 B.R. 697 (Bankr. E.D. Cal. 2005), arose out of a case with a plan that called for 48 months of payments and a 31.5% dividend to unsecured creditors. The debtors sought to refinance their home and to pay off their chapter 13 plan in the 14th month of the plan. The bankruptcy court analyzed this question: "[A]fter having made only 14 of the 48 monthly payments the plan requires them to make, the debtors wish to "pay off" their plan and thereby preclude the trustee and unsecured creditors from ever modifying their plan. May they do so?" *Id.* at 699. The court concluded the debtors' proposal could not be approved.

The court observed that the attempt to alter a confirmed plan in this fashion was inconsistent with the way plans are evaluated and confirmed in the first instance. The court noted that when a plan is proposed, a debtor must demonstrate that it provides for a means of execution, respects the rights of secured creditors, and is proposed in good faith. "It makes little sense to require that a plan specify how it will be funded, and to require regular monthly payments that continue for at least 3 years, then verify that the debtor has the ability to make such payments only to permit the debtor to perform differently than required by the plan." *Id.* at 700.

Subsequently, the Ninth Circuit endorsed *Fridley*'s determination that a "minimum duration for chapter 13 plans is crucial to an important purpose of § 1329's modification process: to ensure that unsecured creditors have a mechanism for seeking increased (that is, non-zero) payments if a debtor's financial circumstances improve unexpectedly." *In re Flores*, 753 F. 3d 855, 860 (9th Cir. 2013) (en banc) (citing *Fridley*). Applying § 1329 to the applicable commitment period required by § 1325(b)(1)(B), the Flores court found that

MEMORANDUM DECISION

Case: 16-50548   Doc# 39   Filed: 09/26/16   Entered: 09/26/16 13:56:46   Page 27 of 48

"creditors' opportunity to seek increased payments that correspond to changed circumstances would be undermined by an interpretation of § 1325(b)(1)(B) that relieves debtors from a minimum plan duration merely because they have no projected disposable income at the time of plan confirmation." *Id.*

One might reasonably argue the cases discussed above are different from the cases under submission because in the cases under submission, Debtors did not specify a particular length. The court cannot accept that argument. These decisions stand for the central proposition that a debtor who proposes a plan must perform under that plan over the term of the plan. And, if the debtor's circumstances change, creditors or the trustee are entitled to ask that the plan be modified.

Here, Debtors' counsel—and the Trustee in this division—assert that because there is no objection to confirmation by the Trustee (or creditors), there is no applicable commitment period.[35] Thus, they contend that they can terminate a plan at any point after the payments required under that plan have been completed. In other words, so long as there is no objection, there is no applicable commitment period, and the plans can terminate at any time and without modification. Because the plan, as they have revised it and as they conceive of it, contains no obligatory term, this reasoning cannot come into play.

Applying their interpretation to *Mercado* illustrates the error in this approach. Mr. Mercado is a married man who filed separately. The income of his non-filing spouse is figured into the determination of whether he is an above or below median debtor, and into the calculation of his disposable income.[36] The Mercados' recently had a baby and Ms. Mercado is currently caring for their new child and is not employed. As a result, Mr. Mercado is a below median income debtor, and the maximum plan length he is required to propose is 36

---

[35] During the hearings, counsel for *Escarcega* argued that only certain objections by the Trustee or creditors may trigger the applicable commitment period. As no objections were filed in these cases, we do not decide whether an objection must be filed pursuant to § 1325(a) or (b) in order for the applicable commitment period to apply.

[36] *See* § 521, FRBP 1007, Instruction to Bankruptcy Forms of Individuals re Official Form 106I, "Schedule I: Your income".

MEMORANDUM DECISION

Case: 16-50548   Doc# 39   Filed: 09/26/16   Entered: 09/26/16 13:56:46   Page 28 of 48

months.  Mr. Mercado proposes paying $175 per month for 36 months, for a total of $6,300 into his plan.  At trial, he testified that the couple anticipates Ms. Mercado will return to work as a nurse.  So, while their combined income is now below median income, it is anticipated to increase substantially soon – and certainly within a 36 month plan period.  As a result of the additional provisions, and their past application in this division, the Mercados would be able to take Ms. Mercado's initial paychecks, apply them to the plan, and obtain a discharge without notice of a proposed modification and the opportunity for unsecured creditors or the trustee to object.  This eliminates any opportunity for unsecured creditors to receive a distribution despite their increased income.  Further, the case will be discharged and closed by the time the Mercados are required to provide tax returns to the Trustee evidencing their increased income.

This turns the Bankruptcy Code on its head.  As the BAP described in *Fridley*¸ a debtor is entitled to chapter 13 relief and a discharge if the statutory standards are met.  The mechanism of the Bankruptcy Code, read fairly, provides that a debtor will specify a length for their plan and will carry that plan out.  If, during the life of the plan, modifications are warranted, they should be made.  Once a motion to modify has been filed, the Trustee has a duty to ensure the modified plan complies with the requirements incorporated by § 1329(b), including that the modification is proposed in good faith.  And as with confirmation, the court has an independent duty to evaluate these motions to determine if they are consistent with the law.

To be clear, the temporal requirement we find is distinct from the applicable commitment period imposed by § 1325(b) following an objection to confirmation.  The bedrock of this temporal requirement is found in §§ 1328(a) and 1329(b), discussed above.

Having chosen to file chapter 13 and receive its benefits, a debtor may not draft a plan that makes the careful structure and protections of the Bankruptcy Code ephemeral.  Altering the Model Plan so as to create an illusory term, obtaining the Trustee's agreement to the additional provisions so as to avoid an objection and application of § 1325(b)'s applicable commitment period, and then terminating the plan earlier than its stated term without a motion

MEMORANDUM DECISION

Case: 16-50548    Doc# 39    Filed: 09/26/16    Entered: 09/26/16 13:56:46    Page 29 of
48

to modify does just that. Again, this court finds that the application of additional provisions 5.02 and 5.03 do not comply with the provisions of chapter 13, specifically §§ 1328(a) and 1329, rendering the plan unconfirmable pursuant to § 1325(a)(1). Further, the court finds the additional provisions to the plans are not proposed in good faith, as required by § 1325(a)(3).

        H.      Improper Completion of the Model Plan

      Before considering the remaining additional provisions, we must first address how Section 1.01(a) of the Model Plan is to be completed. This section asks a debtor to describe the source of plan payments and offers examples such as wages, rental income, etc. Instead of stating the source of funds, each Debtor initially completed the plan with "As shown on Schedule I." Schedule I is an official form required to be filed by all debtors with their petition or shortly thereafter. It provides information on the amount and sources of a debtor's income. But unlike the plan, Schedule I is not served on all creditors.

      Completing Section 1.01(a) with "as shown on Schedule I" may technically satisfy the form. Yet it is counter to one of the purposes of the Model Plan – to provide a single document setting forth information sufficient to support its feasibility and to satisfy the other confirmation requirements. This issue was raised at the initial hearing on plan confirmation in *Vick*. The *Vick* and *Mercado* plans have been amended accordingly.

      The plans of *Escarcega*, *Candalla*, and *Sisk* continue to provide that the source of funds is as shown on Schedule I. Because creditors have not been served with a copy of Schedule I, these plans, together with Schedule I, will need to be served on all creditors before they can be confirmed. Preferably, the Debtors will amend their plans to include the required information. In the future, plans that refer to schedules that are not served will not be approved.

      Similarly, *Escarcega* states that the amount of his plan payment will increase twice over the term of his plan. However, he adds the second increase in an additional provision. The blank provided in section 1.01(a) may be extended to state as many changes in payment

MEMORANDUM DECISION

as are required.  Again, for ease of reference the scope of plan payments should be included in this provision without reference to another section of the plan.

I.    <u>Remaining Additional Provisions</u>

1.    <u>Section 5.01 – MMM Program</u>

Debtors filed an Additional Provision 5.01 stating that:  "Debtor does not elect to participate in this Court's Mortgage Modification Mediation (MMM) Program pursuant to General Order 29."  This provision is unnecessary as the Model Plan does not default to or require participation in the MMM Program.  If a debtor chooses to participate in the MMM Program, then an Additional Provision provided by the court is required to be included in the plan (the "MMM Provision").  The required MMM Provision is available on the Court's website.

Although unnecessary, this Additional Provision does not interfere with confirmation. Going forward, if a debtor elects to participate in the MMM Program, the plan must include the MMM Provision.  If a debtor chooses not to participate in the MMM Program, they may either make no mention of it or include a provision stating that they elect not to participate. Only those debtors that expressly include the MMM Provision will participate in the MMM Program.

Neither contested confirmation nor evidentiary hearings will be required for plans that include either of these references to the MMM Program as an Additional Provision.

MEMORANDUM DECISION

31

2.     Section 5.02 b. – Deletion of § 1.01(c)

In a case in which there is an applicable commitment period, Section 1.01(c) provides the required minimum term.  It provides:

> **1.01 c.** The monthly plan payments will continue for _____ months unless all unsecured claims are fully paid within a shorter period of time.  This plan cannot propose monthly payments beyond 60 months.

Debtors propose Additional Provision 5.02(b) that deletes the first sentence of this section.  That is unnecessary.

Many cases do not have an applicable commitment period.  In these cases, the blank may be completed with "N/A."  Yet many cases do have an applicable commitment period as a result of an objection by the Trustee or by the holder of an allowed unsecured claim.  *See* § 1329(b).  At the filing of their plan, a debtor is unlikely to anticipate an objection, thus "N/A" is an appropriate response.  If the applicable commitment period is triggered, then the debtor can file an amended plan with the appropriate term.

Deleting the sentence does not provide greater protection or clarification than stating "N/A."  Instead, it is more likely to cause confusion.  Even more, having provisions regarding the applicable commitment period in two sections of the plan is likely to create inconsistent revisions and unnecessary errors.  For these reasons, the court declines to approve Additional Provision 5.02(b).

MEMORANDUM DECISION

Case: 16-50548    Doc# 39    Filed: 09/26/16    Entered: 09/26/16 13:56:46    Page 32 of 48

### 3.   Deleting § 2.08 Regarding Loan Modifications

Included in the initial additional provisions is a request to delete Section 2.08 of the Model Plan,[37] which provides for information related to a loan modification that a debtor is pursuing outside of the MMM program. *Escarcega*, *Candalla*, and *Sisk* seek to delete this provision, because they are not seeking a loan modification. As with the remainder of the Model Plan, sections that are not relevant to a debtor's case may be left blank. For example, *Candalla* left Sections 2.04, 2.06, and 2.07 blank, or stated none, but he only seeks to delete Section 2.08. Accordingly, this Additional Provision is unnecessary and likely to cause confusion based on the inconsistency in how a blank section is interpreted. On this basis, the court declines to approve the Additional Provision seeking to delete Section 2.08.

### 4.   Adding Additional Provisions Requiring 100% Payment or Interest on Unsecured Nonpriority Claims

The initial additional provisions include options to check a box indicating that "Class 7 claimants shall receive 100% payment on their allowed nonpriority unsecured claims" and that "Interest shall accrue and be paid on all allowed unsecured claims at the federal judgment interest rate of ____%." As none of these Debtors seeks to pay their general unsecured creditors 100% of their allowed claims or interest, these provisions are not relevant to these cases and will not be approved. In a case in which a debtor's plan provides or requires such treatment, an additional provision so stating is likely to be appropriate. When relevant to the facts of the case, that issue may be presented to the court for review at a hearing on confirmation.

---

[37] As a result of *Vick* and *Mercado* filing an amended plan with additional provisions relevant only to their cases this additional provision is only included in the *Escarcega*, *Candalla*, and *Sisk* cases. To avoid confusion, the provision is referenced by Model Plan section.

MEMORANDUM DECISION

33

1  5.  Section 5.04 – Referencing § 1328(a)

2

3  Additional Provision 5.03 seeks to amend Section 4.03 to change a reference from

4  § 1328 to § 1328(a).  The Model Plan states:

5

6  **4.03 Impermissible Provisions.** Notwithstanding any other term in this plan, Debtor does

7  not seek through the confirmation and completion of this plan either a determination of the

8  dischargeability of any debt or the discharge of any debt that is non-dischargeable as a

9  matter of law in a Chapter 13 case under 11 U.S.C. § 1328.

10

11

12  Debtors assert that the Model Plan language could require a debtor to waive his or her

13  right to the standard chapter 13 discharge of § 1328(a).  Their concern is that this language

14  could be interpreted to mean that a debtor who is entitled to a full discharge under § 1328(a)

15  has voluntarily agreed to accept the more limited hardship discharge provided in § 1328(b).[38]

16  Debtors' feared interpretation does not consider the language referencing debt that is

17  non-dischargeable as a matter of law, as opposed to a matter requiring adjudication of facts.

18  This provision forecloses the discharge of debts that may be discharged only through an

19  adversary proceeding, such as the student loan at issue in *Espinosa*, 559 U.S. 260, 130 S. Ct.

20  1367.  It does not limit the type of discharge to which a debtor may be entitled as a matter of

21  law.

22  Since 2009, chapter 13 plans from the San Francisco Division applied substantially

23  similar language.  During this lengthy period, the court is not aware of any request to interpret

24  this provision in the manner Debtors anticipate.  In any case, the discharge granted by

25  separate order at the conclusion of a case provides the ultimate determination of the scope of

26  discharge.

27  _____

28  [38] *Vick*, 16-50401, Docket # 27, page 18, lines 19-21.

MEMORANDUM DECISION

34

Nevertheless, the proposed revision from § 1328 to § 1328(a) is consistent with the intent of this provision and is unlikely to cause confusion. So this additional provision is allowed. Future plans incorporating this additional provision will not require a contested confirmation or evidentiary hearing based on its inclusion.

      6.      <u>Section 5.05 – Delayed Vesting</u>

The *Escarcega*, *Candalla*, and *Sisk* Debtors seek to modify the Model Plan's provision regarding vesting not at the time of confirmation. The Model Plan provides:

> **4.01 Vesting of property.** Property of the estate will revest in Debtor upon confirmation. If Debtor does not want the property to revest, Debtor must check the following box: ___ SHALL NOT REVEST.
>
> If the property of the estate does not revest in Debtor, Trustee is not required to file income tax returns for the estate, insure any estate property or make any of the Debtor's ongoing, regular post-petition debt payments with the exception of monthly cure payments otherwise required by this plan. Upon completion of this plan, all property shall revest in Debtor.

Debtor's proposed change to this section is found in Additional Provisions § 5.05, and provides:

>     Section 4 of the plan is modified as follows, if checked here:
>
>     ___ Delayed Vesting: Notwithstanding Section 4.01, property of the estate shall revest in the Debtor upon discharge, dismissal, or the closing of this case, whichever is earlier.

Debtors assert that since § 1322(b)(9) provides for vesting "on confirmation of the plan or at a later time" the Model Plan substantially abridges Debtors' rights. Yet their additional provision provides little more than the Model Plan. Debtors seek to have property

MEMORANDUM DECISION

revest "upon discharge, dismissal, or the closing of this case, whichever is earlier." In comparison, the Model Plan provides for delayed vesting upon completion of the plan.

We look to the plan process to parse out this provision. Once a debtor successfully completes his or her plan payments, he or she will receive a discharge and the case will be closed. If the debtor is not entitled to a discharge, then upon plan completion the case will simply close without it. By providing for revesting upon completion of the plan, the Model Plan provides for revesting as soon as the debtor has completed their obligations. Case completion always precedes discharge or case closing where the debtor has fulfilled his or her obligations under the confirmed plan.

The remaining alternative, revesting upon dismissal, is not specifically contemplated in the Model Plan. Section 549(b)(3) specifies that upon dismissal, all property coming into the estate is revested in the title holder. Further, revesting in a debtor upon dismissal is consistent with the Supreme Court's recent interpretation of a debtor's rights upon conversion in *Harris v. Viegelahn*, ___ U.S. ___, 135 S. Ct. 1829 (2015) (holding that undistributed plan payments made by a debtor must be distributed to the debtor and not the trustee upon conversion to chapter 7); and § 1326(a)(2)(providing for disposition of plan payments upon confirmation or failure of plan).

Nonetheless, the proposed additional provision specifically addresses the common occurrence of dismissal and is unlikely to cause confusion. Accordingly, the court will approve Additional Provision 5.05. Future plans incorporating this additional provision will not require a contested confirmation or evidentiary hearing based on its inclusion.

MEMORANDUM DECISION

## IV. FINDINGS OF FACT

The findings of fact for each case are as follows:

### A. In re Dennis M. Escarcega, 16-50368 SLJ

Debtor filed a voluntary chapter 13 petition on February 6, 2016. He scheduled unsecured claims of $65,331. He indicated his monthly income was $3,171, including a contribution from a significant other of $800 per month. He scheduled expenses of $2,821. He indicated on schedule J, that if he received a pay increase, his living expenses would be "increased accordingly." Debtor indicated on Form 122C-1 that his income was below median. He stated that he hoped to obtain a permanent job offer within six months. Debtor indicated he owned real property (his residence) with a value of $369,006 on schedule A and stated that it was encumbered by a lien with a value of $271,089. He claimed $100,000 of his equity in that property as exempt under California law. He disclosed ownership of two vehicles with a total value of $2,900 on schedule B, which he claimed were exempt under California law. He also owned a recreational vehicle with a value of $17,000. He scheduled and exempted other household items. Debtor's amended chapter 13 plan proposed to pay $350 per month to the Trustee to cover his lawyers' fees, the Trustee's fees, and a payment on the recreational vehicle. Debtor proposed to maintain payments on his residence loan separately. He proposed no payment to unsecured creditors.

### B. In re Eugene E. Vick, 16-50401 MEH

Debtor filed a voluntary chapter 13 petition on February 11, 2016. He scheduled unsecured claims of $21,833. He indicated his monthly income was $3,049, and his expenses were $2,404. Debtor indicated on Form 122C-1 this his income was below median. He disclosed ownership of one vehicle with a value of $24,000, and a lien of $23,200. He also disclosed ownership of a RV trailer with a value of $12,000, and a lien of $3,450. Debtor resides in the RV. He exempted any value in the vehicle, RV, and other personal property. Debtor's amended chapter 13 plan proposed to pay $645 per month to the Trustee for 59

MEMORANDUM DECISION

37

UNITED STATES BANKRUPTCY COURT
for the Northern District of California

months to cover his lawyers' fees, the Trustee's fees, and payments of $80 per month for the vehicle, $320 per month for the RV, and $5 per month for electronic goods. He proposed no payment to unsecured creditors.

### C.    In re Nanette M. Sisk, 16-50548 SLJ

Debtor filed a voluntary chapter 13 petition on February 26, 2016. She scheduled unsecured claims of $55,082. She indicated her monthly income was $2,552, and her expenses were $2,477. These figures were net of her business income and expenses as a sole proprietor. She indicated on schedule J, "As Debtor's self-employment income varies, so with [sic] the living expenses she can afford to pay." Debtor indicated on Form 122C-1 that her income was above median, and her plan would last 5 years. She disclosed ownership of one vehicle with a value of $5,500, which she claimed as only exempted $5,100 under California law. Debtor's chapter 13 plan proposed to pay $75 per month to the Trustee to cover her lawyers' fees and the Trustee's fees. She proposed no payment to unsecured creditors.

### D.    In re Jeri Lyle S. Mercado, 16-50651 SLJ

Debtor filed a voluntary chapter 13 petition on March 4, 2016. He scheduled unsecured claims of $18,831. He indicated his monthly income was $3,068, and his expenses were $2,893. Debtor indicated on Form 122C-1 that his income was below median. He disclosed ownership of one vehicle with a total value of $25,000, and a lien of $24,297, as well as some personal property that was offered as collateral. He exempted any value in his personal property and other household items. Debtor's amended chapter 13 plan proposed to pay $175 per month to the Trustee for 36 months to cover his lawyers' fees, the Trustee's fees, and payments of $5 per month to Kay Jewelers and an exercise equipment company. He proposed no payment to unsecured creditors.

MEMORANDUM DECISION

E.     <u>In re Mark I. Candalla, 16-50659 SLJ</u>

Debtor filed a voluntary chapter 13 petition on March 4, 2016.  He scheduled unsecured claims of $60,348.  He indicated his monthly income was $5,741, and his expenses were $5,186.  He indicated on schedule J, "As Debtor's income varies, so will the funds available for living expenses." Debtor indicated on Form 122C-1 that his income was below median.  He disclosed ownership of one vehicle with a value of $22,310, and a secured claim of $22,310.  He claimed any equity in the vehicle and household goods as exempt under California law.  Debtor's chapter 13 plan proposed to pay $555 per month for 60 months to the Trustee to cover his lawyers' fees, the Trustee's fees, a $225 vehicle payments, and a small amount of priority tax debts.  He proposed no payment to unsecured creditors.

## V.     CONCLUSION

Orders consistent with this decision are issued in each case contemporaneous with entry of this decision.

Dated:  September 26, 2016

HON. M. ELAINE HAMMOND
United States Bankruptcy Judge

HON. STEPHEN L. JOHNSON
United States Bankruptcy Judge

MEMORANDUM DECISION

39

April – July 2016 Cases with Final Decree and Discharge
(Sorted by difference between confirmed and actual length of plan.)

| Last name | Case number | Confirmed Length (mos.) | Actual Length (mos.) | Difference (mos.) | Final Decree |
|---|---|---|---|---|---|
| O'Brien | 14-53914 | 60 | 11 | 49 | 5/17/16 |
| Perez | 14-53580 | 60 | 15 | 45 | 5/17/16 |
| Timm | 14-53233 | 60 | 20 | 40 | 7/20/16 |
| Watterson | 14-51053 | 60 | 21 | 39 | 5/18/2016 |
| Banse | 13-56515 | 60 | 24 | 36 | 4/18/16 |
| Ebell | 13-56280 | 60 | 24 | 36 | 4/13/2016 |
| Matias | 13-55030 | 60 | 27 | 33 | 6/14/16 |
| Peralta | 13-55119 | 60 | 28 | 32 | 4/13/2016 |
| Thompson | 13-55059 | 60 | 29 | 31 | 5/23/16 |
| Peralta | 13-54128 | 60 | 30 | 30 | 6/15/2016 |
| Mendoza | 13-52380 | 60 | 32 | 28 | 5/18/2016 |
| Castaneda | 14-51457 | 48 | 21 | 27 | 5/23/16 |
| Koch | 12-57538 | 60 | 34 | 26 | 4/1/16 |
| Munoz | 13-51584 | 60 | 35 | 25 | 6/15/16 |
| Foster | 13-52277 | 60 | 35 | 25 | 7/20/16 |
| McNair | 13-51176 | 60 | 35 | 25 | 7/21/2016 |
| Torres & Escamilla | 12-58087 | 60 | 35 | 25 | 5/18/2016 |
| Bailey | 13-50309 | 60 | 36 | 24 | 4/13/16 |
| Garcia | 12-57725 | 60 | 36 | 24 | 6/16/2016 |
| Hernandez | 12-56909 | 60 | 36 | 24 | 4/1/2016 |
| Montanez | 12-56242 | 60 | 37 | 23 | 4/1/16 |
| Miletak | 12-57520 | 60 | 37 | 23 | 4/1/16 |
| Tu & Huynh | 13-50455 | 60 | 37 | 23 | 6/16/2016 |
| Khinno | 12-57197 | 60 | 37 | 23 | 4/13/2016 |
| Dinh | 12-58703 | 60 | 37 | 23 | 5/17/16 |
| Dickson | 13-52370 | 55 | 32 | 23 | 4/13/2016 |
| Harris | 12-57246 | 60 | 38 | 22 | 4/18/16 |
| Lee | 13-50068 | 60 | 38 | 22 | 7/20/16 |
| Corona | 12-56649 | 60 | 38 | 22 | 4/1/2016 |
| Bosteder | 12-57886 | 60 | 38 | 22 | 7/20/16 |
| Smith | 12-55653 | 60 | 38 | 22 | 4/13/2016 |
| Ellis | 13-50078 | 60 | 38 | 22 | 7/21/2016 |
| Mendoza | 14-50450 | 48 | 26 | 22 | 6/14/16 |
| Bladow | 12-56039 | 60 | 39 | 21 | 4/1/2016 |
| Pardini | 12-58035 | 60 | 39 | 21 | 7/20/16 |
| Denos | 12-54279 | 60 | 39 | 21 | 4/1/2016 |
| Fritz | 12-56454 | 60 | 39 | 21 | 5/18/2016 |
| Singh & Kaur | 12-57208 | 60 | 39 | 21 | 7/21/2016 |
| Delpasen | 12-57490 | 60 | 40 | 20 | 5/17/16 |
| Aguilar | 12-56397 | 60 | 40 | 20 | 4/13/2016 |
| Nguyen | 12-53539 | 60 | 40 | 20 | 4/13/2016 |
| Delgado | 12-58091 | 60 | 40 | 20 | 7/20/16 |
| Legaspi | 12-56412 | 60 | 40 | 20 | 7/20/16 |
| Street | 12-55567 | 60 | 40 | 20 | 5/18/2016 |
| Verduzco | 11-57820 | 60 | 41 | 19 | 4/13/16 |

April - July 2016 Cases with Final Decree and Discharge
(Sorted by difference between confirmed and actual length of plan.)

**EXHIBIT A**

| Last name | Case number | Confirmed Length (mos.) | Actual Length (mos.) | Difference (mos.) | Final Decree |
|---|---|---|---|---|---|
| Neumann | 12-54068 | 60 | 41 | 19 | 4/13/16 |
| Roberson | 12-54172 | 60 | 41 | 19 | 5/18/16 |
| Verceles | 12-55675 | 60 | 42 | 18 | 5/19/16 |
| Velez | 12-56208 | 60 | 42 | 18 | 6/15/2016 |
| Walsh | 12-56689 | 56 | 38 | 18 | 5/18/16 |
| Castro & Romo | 11-58153 | 60 | 42 | 18 | 6/22/2016 |
| Fernandez | 12-53564 | 60 | 42 | 18 | 4/1/16 |
| Delgado | 12-54957 | 60 | 42 | 18 | 6/30/2016 |
| Karst | 12-52703 | 60 | 43 | 17 | 5/17/16 |
| Basanty | 12-55849 | 60 | 43 | 17 | 7/21/2016 |
| Preston | 12-55025 | 60 | 43 | 17 | 5/19/2016 |
| Hashemi | 12-51543 | 60 | 43 | 17 | 6/15/16 |
| Anaya | 09-61289 | 58 | 41 | 17 | 5/23/16 |
| Texon | 13-52077 | 50 | 33 | 17 | 5/18/2016 |
| Edem | 12-52916 | 60 | 43 | 17 | 4/1/16 |
| Cooper | 12-55539 | 60 | 43 | 17 | 5/18/16 |
| Penoringan | 11-55616 | 60 | 54 | 16 | 4/18/16 |
| Roman | 11-59254 | 60 | 44 | 16 | 4/1/2016 |
| Smith | 11-56094 | 60 | 54 | 16 | 4/18/16 |
| Madrigal | 12-51659 | 60 | 44 | 16 | 6/16/2016 |
| Huerta | 12-55884 | 60 | 44 | 16 | 7/21/16 |
| Mena | 12-52838 | 60 | 44 | 16 | 7/21/2016 |
| Paredes | 12-51535 | 60 | 45 | 15 | 7/7/2016 |
| Casica | 12-52188 | 60 | 45 | 15 | 4/13/16 |
| Chateauvert | 12-53210 | 60 | 45 | 15 | 6/1/16 |
| Ramirez | 12-52609 | 60 | 45 | 15 | 6/16/16 |
| Ahmed | 12-53885 | 58 | 43 | 15 | 5/19/2016 |
| Dang & Phan | 12-51561 | 60 | 45 | 15 | 4/13/16 |
| Nguyen | 11-60472 | 60 | 45 | 15 | 4/1/16 |
| Condori | 12-51729 | 60 | 45 | 15 | 4/13/2016 |
| Hernandez | 12-51210 | 60 | 45 | 15 | 6/22/2016 |
| Beuttler | 12-51886 | 60 | 46 | 14 | 7/20/16 |
| Cervantes | 12-52950 | 60 | 46 | 14 | 6/15/2016 |
| Velazquez | 12-50844 | 60 | 46 | 14 | 4/1/2016 |
| Powers | 12-53449 | 60 | 46 | 14 | 7/21/2016 |
| Argo | 12-53090 | 60 | 46 | 14 | 7/22/16 |
| Ybarra | 11-61287 | 60 | 47 | 13 | 4/13/16 |
| Blue | 12-50454 | 60 | 47 | 13 | 4/18/2016 |
| Orozco & Romo-Orozco | 12-50869 | 60 | 47 | 13 | 5/18/2016 |
| Sepulveda | 11-59341 | 60 | 47 | 13 | 4/13/16 |
| deVolo | 11-61359 | 60 | 47 | 13 | 4/1/16 |
| Martin | 12-51792 | 60 | 47 | 13 | 6/15/2016 |
| Canchola | 12-50470 | 60 | 47 | 13 | 5/18/2016 |
| Gutierrez | 12-50166 | 60 | 48 | 12 | 6/16/16 |
| Lewis | 13-51822 | 57 | 45 | 12 | 5/18/2016 |

April - July 2016 Cases with Final Decree and Discharge
(Sorted by difference between confirmed and actual length of plan.)

| Last name | Case number | Confirmed Length (mos.) | Actual Length (mos.) | Difference (mos.) | Final Decree |
|---|---|---|---|---|---|
| Lam | 11-56728 | 60 | 48 | 12 | 4/13/16 |
| Carandang | 13-55963 | 36 | 28 | 12 | 7/20/16 |
| Samano | 12-51252 | 60 | 48 | 12 | 7/21/2016 |
| Castulo | 12-53821 | 52 | 40 | 12 | 4/1/2016 |
| Filipe | 12-50310 | 60 | 48 | 12 | 4/13/2016 |
| Brady | 11-60369 | 60 | 49 | 11 | 4/13/16 |
| Lucero | 11-57530 | 60 | 49 | 11 | 5/18/2016 |
| Paniagua | 11-57254 | 60 | 49 | 11 | 4/1/2016 |
| Whitcomb | 11-61374 | 60 | 49 | 11 | 7/21/2016 |
| Jaquith | 12-51952 | 60 | 49 | 11 | 7/20/2016 |
| Mladineo | 13-54594 | 36 | 27 | 11 | 4/16/16 |
| Bracamontes | 14-50664 | 36 | 25 | 11 | 7/21/2016 |
| Flaherty | 11-59579 | 60 | 49 | 11 | 5/18/2016 |
| Howard Tiggs | 11-59144 | 60 | 49 | 11 | 4/1/2016 |
| Chang | 11-59768 | 60 | 49 | 11 | 4/13/2016 |
| Sauce | 11-57365 | 60 | 49 | 11 | 5/19/2016 |
| Murga | 12-56248 | 53 | 42 | 11 | 6/15/2016 |
| Tapia | 11-59277 | 60 | 50 | 10 | 4/13/16 |
| Rodriquez | 11-60680 | 60 | 50 | 10 | 5/17/16 |
| Bayquen | 11-61397 | 60 | 50 | 10 | 6/30/2016 |
| Leach | 12-50032 | 60 | 50 | 10 | 6/15/2016 |
| Guagliardo | 11-56471 | 60 | 50 | 10 | 4/13/2016 |
| Michel | 12-52158 | 55 | 45 | 10 | 4/13/16 |
| Sikora | 11-60216 | 60 | 50 | 10 | 4/18/16 |
| Parrish & Romero | 11-61775 | 60 | 50 | 10 | 7/20/2016 |
| Cullen | 11-61736 | 60 | 50 | 10 | 6/16/16 |
| Wong & So | 11-60925 | 60 | 50 | 10 | 7/20/2016 |
| Yanit | 11-61089 | 60 | 51 | 9 | 7/22/16 |
| Sakuragi | 11-59739 | 60 | 51 | 9 | 5/18/2016 |
| Granada | 11-57739 | 60 | 51 | 9 | 4/1/16 |
| Medellin | 11-55112 | 60 | 51 | 9 | 4/1/2016 |
| Chavez | 12-51083 | 55 | 46 | 9 | 4/1/2016 |
| Odom | 11-58476 | 60 | 51 | 9 | 4/1/16 |
| Lagdamen | 11-59080 | 60 | 51 | 9 | 5/17/16 |
| Rocha & Acosta | 11-55592 | 60 | 51 | 9 | 6/15/2016 |
| Perales | 11-58635 | 60 | 52 | 8 | 5/19/16 |
| Gutierrez | 11-56478 | 60 | 52 | 8 | 4/1/16 |
| Lee | 10-62094 | 60 | 52 | 8 | 4/20/2016 |
| Blanco | 13-53441 | 37 | 29 | 8 | 4/13/2016 |
| Lozano | 11-58461 | 60 | 52 | 8 | 4/13/2016 |
| Wallis | 11-58870 | 60 | 52 | 8 | 7/20/16 |
| Jenott | 11-56259 | 60 | 52 | 8 | 4/13/2016 |
| Garza | 11-57142 | 60 | 52 | 8 | 5/18/2016 |
| Blute | 11-56214 | 60 | 52 | 8 | 4/1/2016 |
| Radilla | 11-56522 | 60 | 53 | 7 | 4/1/2016 |

April – July 2016 Cases with Final Decree and Discharge
(Sorted by difference between confirmed and actual length of plan.)

**EXHIBIT A**

| Last name | Case number | Confirmed Length (mos.) | Actual Length (mos.) | Difference (mos.) | Final Decree |
|---|---|---|---|---|---|
| Bozzo | 12-55305 | 48 | 41 | 7 | 5/19/16 |
| Valencia | 11-56563 | 60 | 53 | 7 | 4/13/16 |
| Brantveyn | 11-53741 | 60 | 53 | 7 | 4/13/2016 |
| Lopez | 11-59045 | 60 | 53 | 7 | 6/17/2016 |
| Pope | 11-56089 | 54 | 53 | 7 | 4/13/2016 |
| Velez | 11-54840 | 57 | 50 | 7 | 4/1/2016 |
| Edge | 11-54767 | 60 | 53 | 7 | 5/18/2016 |
| Lopez | 11-57679 | 60 | 53 | 7 | 7/22/16 |
| Noriega | 11-56611 | 60 | 53 | 7 | 4/13/2016 |
| Vasquez | 11-59529 | 60 | 53 | 7 | 7/20/2016 |
| Morgensen | 11-55931 | 60 | 54 | 6 | 4/13/16 |
| Aragon | 11-54981 | 60 | 54 | 6 | 4/1/2016 |
| Dunn | 11-55036 | 60 | 54 | 6 | 4/1/2016 |
| Fernandez | 11-57692 | 60 | 54 | 6 | 6/15/2016 |
| Ibarra | 11-54578 | 60 | 54 | 6 | 4/1/2016 |
| Jaklevick | 11-57340 | 60 | 54 | 6 | 6/15/2016 |
| Mendoza | 11-55064 | 60 | 54 | 6 | 4/1/2016 |
| Gochangco | 11-57069 | 60 | 54 | 6 | 7/22/16 |
| Manuleleua | 11-57058 | 58 | 52 | 6 | 7/20/16 |
| Nevarez | 11-58292 | 58 | 52 | 6 | 4/18/16 |
| Main | 11-58533 | 60 | 54 | 6 | 6/15/16 |
| Hood | 11-57809 | 60 | 54 | 6 | 6/16/16 |
| Alamillo | 11-55216 | 60 | 54 | 6 | 4/1/16 |
| Mapalad | 11-56453 | 60 | 54 | 6 | 6/15/2016 |
| Velazquez | 12-53034 | 48 | 42 | 6 | 6/15/2016 |
| Alvarez | 11-54039 | 60 | 55 | 5 | 4/13/16 |
| Green | 11-54954 | 60 | 55 | 5 | 4/18/2016 |
| Rader & Sanchez | 11-54678 | 60 | 55 | 5 | 5/18/2016 |
| Labra | 11-57598 | 60 | 55 | 5 | 6/14/16 |
| Arriaga | 11-57988 | 60 | 55 | 5 | 7/20/16 |
| Ferraz | 11-54062 | 58 | 53 | 5 | 6/15/2016 |
| Deem | 13-52180 | 37 | 32 | 5 | 7/20/16 |
| Raynov | 13-51319 | 37 | 32 | 5 | 4/13/16 |
| Hernandez | 11-56925 | 60 | 55 | 5 | 7/20/2016 |
| Raynova | 13-51320 | 37 | 32 | 5 | 4/13/2016 |
| Garcia | 11-55970 | 60 | 55 | 5 | 5/17/16 |
| Davidson | 12-57417 | 45 | 40 | 5 | 6/16/16 |
| Jensen | 11-54080 | 60 | 55 | 5 | 6/1/16 |
| Gaudette | 10-50123 | 60 | 55 | 5 | 4/28/2016 |
| Pashut | 13-54607 | 36 | 31 | 5 | 7/21/2016 |
| Smith | 11-54685 | 60 | 55 | 5 | 4/18/2016 |
| Clark | 11-59550 | 60 | 54 | 4 | 7/20/2016 |
| Kosmorsky | 11-55415 | 60 | 56 | 4 | 6/17/2016 |
| Niufar | 11-51090 | 60 | 56 | 4 | 4/13/2016 |
| Urbina | 11-56995 | 60 | 56 | 4 | 7/20/2016 |

April - July 2016 Cases with Final Decree and Discharge
(Sorted by difference between confirmed and actual length of plan.)

**EXHIBIT A**

| Last name | Case number | Confirmed Length (mos.) | Actual Length (mos.) | Difference (mos.) | Final Decree |
|-----------|-------------|-------------------------|----------------------|-------------------|--------------|
| Sanchez & Salas | 11-52935 | 60 | 56 | 4 | 4/18/2016 |
| Garner | 12-54455 | 49 | 45 | 4 | 6/16/16 |
| Howe | 11-52792 | 60 | 56 | 4 | 4/18/2016 |
| Singca | 11-50335 | 60 | 56 | 4 | 4/18/2016 |
| Graham | 11-57139 | 60 | 56 | 4 | 7/20/2016 |
| Lockett | 11-54113 | 60 | 56 | 4 | 4/13/2016 |
| Rojas & Aranda | 11-52776 | 60 | 56 | 4 | 4/18/2016 |
| Tran | 10-62095 | 60 | 56 | 4 | 4/13/16 |
| Garcia | 11-56118 | 60 | 56 | 4 | 6/30/2016 |
| Nguyen | 11-50165 | 60 | 56 | 4 | 4/13/2016 |
| McDougall | 11-55916 | 60 | 56 | 4 | 6/16/16 |
| Clark | 11-59849 | 54 | 50 | 4 | 4/13/2016 |
| McIntyre | 11-59086 | 58 | 54 | 4 | 7/20/2016 |
| Bajala | 11-56016 | 60 | 56 | 4 | 6/16/16 |
| Mateo | 11-51857 | 60 | 57 | 3 | 4/4/16 |
| Humble | 11-53883 | 60 | 57 | 3 | 6/15/16 |
| Sargenti | 10-63220 | 60 | 57 | 3 | 5/16/16 |
| Caballero | 11-50780 | 60 | 57 | 3 | 4/1/16 |
| Flonnoy | 11-56575 | 60 | 57 | 3 | 7/20/16 |
| Oliver | 11-57018 | 60 | 57 | 3 | 7/20/2016 |
| Soto & Garibay | 11-52475 | 60 | 57 | 3 | 4/18/2016 |
| Lamboy | 10-62826 | 60 | 57 | 3 | 4/13/2016 |
| Gump & Coral | 11-50057 | 58 | 55 | 3 | 4/13/16 |
| Roth | 11-57059 | 58 | 55 | 3 | 7/20/2016 |
| Sanchez | 12-58543 | 37 | 34 | 3 | 5/17/16 |
| Demayo | 11-59495 | 57 | 54 | 3 | 7/20/2016 |
| Mack | 11-56365 | 60 | 57 | 3 | 7/20/2016 |
| Carvajal | 11-50664 | 60 | 57 | 3 | 4/28/2016 |
| Toledo | 11-54649 | 60 | 57 | 3 | 6/16/2016 |
| Tran | 11-51764 | 60 | 57 | 3 | 4/18/2016 |
| Shorter | 11-57300 | 54 | 51 | 3 | 4/1/16 |
| Aguilar | 13-53266 | 37 | 34 | 3 | 7/21/2016 |
| Brundege | 13-52348 | 38 | 35 | 3 | 7/21/2016 |
| Gaska | 11-55426 | 60 | 57 | 3 | 6/16/2016 |
| Lopez | 11-50967 | 60 | 57 | 3 | 4/13/16 |
| Caberto | 11-52549 | 60 | 57 | 3 | 4/13/2016 |
| Sawamura | 11-54338 | 60 | 57 | 3 | 6/14/16 |
| Flores | 11-54493 | 60 | 57 | 3 | 7/20/2016 |
| Adams | 11-53923 | 60 | 57 | 3 | 6/15/16 |
| Sayson | 11-52723 | 60 | 58 | 2 | 5/17/16 |
| Tallerico | 11-52918 | 60 | 58 | 2 | 6/14/16 |
| Sparkman | 11-51314 | 60 | 58 | 2 | 7/21/16 |
| Ramirez | 11-52066 | 60 | 58 | 2 | 7/20/2016 |
| Williams | 11-54939 | 60 | 58 | 2 | 7/20/2016 |
| Ogana | 11-50152 | 60 | 58 | 2 | 4/18/2016 |

April - July 2016 Cases with Final Decree and Discharge
(Sorted by difference between confirmed and actual length of plan.)

**EXHIBIT A**

| Last name | Case number | Confirmed Length (mos.) | Actual Length (mos.) | Difference (mos.) | Final Decree |
|---|---|---|---|---|---|
| Hawkins | 11-59983 | 55 | 53 | 2 | 7/20/16 |
| Skeen | 12-52713 | 60 | 48 | 2 | 7/20/16 |
| Herrera | 11-50316 | 60 | 58 | 2 | 7/20/16 |
| Ivey | 11-54204 | 60 | 58 | 2 | 7/21/2016 |
| Gentle | 11-55082 | 60 | 58 | 2 | 7/20/16 |
| Do | 11-54201 | 60 | 58 | 2 | 7/20/2016 |
| Kuhlow | 13-53047 | 36 | 34 | 2 | 7/20/16 |
| Harnden | 13-51015 | 36 | 34 | 2 | 4/18/2016 |
| Watterston | 13-50021 | 36 | 35 | 1 | 4/13/16 |
| Carrillo | 11-53444 | 60 | 59 | 1 | 7/21/16 |
| Culbertson | 11-52912 | 60 | 59 | 1 | 6/16/16 |
| Casias | 11-50731 | 60 | 59 | 1 | 5/18/16 |
| Contreras | 11-50726 | 60 | 59 | 1 | 4/18/16 |
| Diaz | 11-51494 | 60 | 59 | 1 | 7/21/16 |
| Shroff | 10-62999 | 60 | 59 | 1 | 7/22/16 |
| Rael | 11-54269 | 60 | 59 | 1 | 7/20/2016 |
| Barragan | 12-59010 | 36 | 35 | 1 | 6/30/16 |
| Hensley | 11-51617 | 60 | 59 | 1 | 5/18/16 |
| Gonzalez | 10-63287 | 58 | 57 | 1 | 4/13/16 |
| Djebroun | 11-51274 | 60 | 59 | 1 | 6/15/2016 |
| Nguyen | 12-50356 | 49 | 48 | 1 | 6/16/16 |
| Albano | 12-58904 | 36 | 35 | 1 | 4/28/2016 |
| Morgia | 13-50572 | 36 | 35 | 1 | 7/21/2016 |
| Castillo | 11-53116 | 57 | 56 | 1 | 5/19/16 |
| Ramirez | 10-63286 | 60 | 59 | 1 | 5/19/16 |
| Kuntaeodjanjun | 11-53976 | 60 | 59 | 1 | 7/20/2016 |
| Arguello | 11-55142 | 60 | 59 | 1 | 7/20/16 |
| Sawant | 11-50168 | 60 | 59 | 1 | 7/20/16 |
| Nguyen | 11-50479 | 60 | 59 | 1 | 6/3/16 |
| Vuong & Lam | 11-51302 | 60 | 59 | 1 | 6/16/2016 |
| Gulas | 12-54433 | 42 | 41 | 1 | 4/1/16 |
| Brown | 11-51481 | 60 | 59 | 1 | 5/18/16 |
| Chandler | 11-52437 | 60 | 59 | 1 | 7/20/2016 |
| Menchaca | 11-50980 | 60 | 59 | 1 | 7/20/2016 |
| Mesa | 11-52493 | 60 | 59 | 1 | 6/15/16 |

# EXHIBIT B

## Section 5. Additional Provisions (Continuation page 1)

**5.01.** Debtor does not elect to participate in this Court's *Mortgage Modification Mediation (MMM) Program* pursuant to General Order 29.

**5.02.** Section 1 of the plan is modified as follows:
   a. The length of the plan as reflected in the cumulative terms of the monthly payments provided in Section 1.01(a) is the estimated length of the plan.
   b. The first sentence of Section 1.01(c) is deleted.

**5.03.** Section 2 of the plan is modified as follows:
   a. Section 2.08 is deleted.
   b. Section 2.12 is modified to add the following, if checked here:
      ☑ Class 7 claimants shall receive an aggregate dividend of $_____ 0 ____, which amount can be increased by up to $1.00 to an amount sufficient for the trustee to administer payments on these claims, which shall be shared pro-rata based on the amounts of their respective allowed nonpriority unsecured claims.
      ☐ Class 7 claimants shall receive 100% payment on their allowed nonpriority unsecured claims.
   c. If checked here, the following provision is added to Section 2 of the plan:
      ☐ Interest shall accrue and be paid on all allowed unsecured claims at the federal judgment interest rate of ____%.

**5.04.** Section 4.03 is amended to add "(a)" after "§ 1328" at the end of the sentence.

**5.05.** Section 4 of the plan is modified as follows, if checked here:
   ☐ *Delayed Vesting*: Notwithstanding Section 4.01, property of the estate shall revest in the Debtor upon discharge, dismissal, or the closing of this case, whichever is earlier.

***5.06.*** *After the first 18 months, the plan payments will increase to $500 monthly thereafter.*

**EXHIBIT C**

EUGENE EDWARD VICK

### Section 5. Additional Provisions (Continuation page 1)

**5.01.**    Debtor does not elect to participate in this Court's *Mortgage Modification Mediation (MMM) Program* pursuant to General Order 29.

**5.02.**    Section 1 of the plan is modified as follows:
a.   Notwithstanding Section 101(a), once the debtor has paid all allowed secured and priority claims and administrative expenses as provided for in this plan, the plan shall be deemed completed and no further payments to the Trustee shall be required.
b.   The first sentence of Section 1.01(c) is deleted.

**5.03.**    Section 2.12 of the plan is modified to add the following:
Class 7 claimants shall receive an aggregate dividend of $_0_.

**5.04**     Section 4.03 of the plan is amended to add "(a)" after "§1328" at the end of the sentence.

UNITED STATES BANKRUPTCY COURT
for the Northern District of California

1    **COURT SERVICE LIST**

2    ECF Parties by Electronic Means Only

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM DECISION